FILED

2010 Jul-15  AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **PERFECTION CABINETRY, LLC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action  5:07-cv-01188-JEO** |
| | ) | |
| **KITCHENS INTERNATIONAL,** | ) | |
| **INC., and JANET-MARIE SHIELL,** | ) | |

**MEMORANDUM OPINION**

This case is before the court on the motion of the plaintiff (hereinafter "the plaintiff" or

"Perfection") for summary judgment as to the counterclaims of the defendant (hereinafter "the

defendant" or "Kitchens") (doc. 33), as well as the plaintiff's unopposed motion to strike the

affidavit of Janet-Marie Shiell (hereinafter "Shiell") (doc. 40) submitted by the defendants.  The

motion for summary judgment has been fully briefed.  For the reasons set out below, the court

finds that the plaintiff's motion to strike is due to be denied and the plaintiff's motion for

summary judgment is due to be granted in part and denied in part.

I.        **BACKGROUND**

          A.        **Procedural History**

          The plaintiff filed its lawsuit against Kitchens in the Cullman County, Alabama Circuit

Court, asserting claims of account stated, breach of contract, goods sold and delivered, and

fraud/misrepresentation/suppression for the defendant's failure to pay for the manufacture and

delivery of cabinets according to their express contract.  The defendant then removed the action

to this court pursuant to 28 U.S.C. § 1332.  (*See* Doc. 1).  The plaintiff later filed an amended

complaint, asserting the same claims against both defendants.  (Doc. 10).  The defendants

(Kitchens and Shiell) answered the amended complaint and Kitchens filed a counterclaim against

Perfection.  (Doc. 26).  Perfection now moves for summary judgment on the defendant's

counterclaims (doc. 33) and has filed the motion to strike the affidavit of Shiell (doc. 40).

### B.      Statement of Facts[1]

Perfection is a cabinet manufacturer that provides cabinets to be installed in single-family

dwellings, multi-family dwellings, and commercial buildings.  (Doc. 34 at 3 of 29[2]).  Kitchens is

a distributor of cabinetry, counter tops and related components and does business from locations

in the State of Louisiana and Montreal, Canada.  (Doc. 26 at ¶ 1).  In the Spring of 2006,

Kitchens contacted Perfection to obtain price quotes on certain jobs.  (Doc. 26 at ¶ 4; Apel Aff. at

¶ 5).[3]  Perfection and Kitchens entered into a contract whereby Perfection would provide

cabinetry for a job in Rhode Island (hereinafter "the Rhode Island job").[4]  In the summer of 2006,

Perfection made deliveries of cabinets and other products for the Rhode Island job.  The parties

dispute whether Perfection performed adequately under the contract for the Rhode Island job and

to what extent, if any, Kitchens is required to pay on an outstanding balance.[5]

Perfection also provided price quotes to Kitchen on several other jobs.  The extent to

---

[1]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the non-moving.  They are the "'facts' for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)."  *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[2]The page references in document 34 are to the electronic page numbers at the top of each page.

[3]Kurt Apel's affidavit is located at doc. 35-5.

[4]The parties dispute whether they entered into one or two contracts for the particular job, but that detail is inconsequential to the court's analysis of the instant motion.

[5]This issue is the basis of the plaintiff's complaint.  Perfection argues that Kitchens has an outstanding balance of $126,921.93, plus all applicable interest, attorneys' fees and costs.  (Doc. 10).  Kitchens argues that it did not receive all products ordered from Perfection, that some of the products it did receive were not in conformity with the contract, and that Perfection is not entitled to the contract price as a result.  Additionally, Kitchens argues that the defects in Perfection's performance of the contract caused it to incur additional expenses to remedy the defects.  (Doc. 36 at 6-10 of 23).

which Perfection was bound by those price quotes is the second basis of Kitchens' counterclaims.

(Doc. 26).

### C.    Kitchens' Counterclaims

Kitchens' counterclaims lack clarity.  In the pleading, the defendant asserts as follows:

> 4.  In the spring of 2006, Kitchens entered into negotiations with Perfection concerning the manufacture by Perfection for Kitchens of certain cabinetry and related components for sale by Kitchens to certain Kitchens' customers.

> 5.  Perfection represented to Kitchens that Perfection could and would manufacture cabinetry and components to Kitchens' specifications and could meet Kitchens' timetable for delivery of the manufactures [sic] cabinetry and components to Kitchens' customers' job sites.

> 6.  Perfection quoted to Kitchens prices for the manufacture and delivery of cabinetry and components to Kitchens' customer's job sites, which said quotes Kitchens relied on and incorporated into sales proposals made to Kitchens' customers.

> 7.  In April of 2006 Kitchens placed an order and entered into a contract with Perfection for the manufacture and delivery of certain cabinetry and components to Kitchens' customer's job site within the month of May 2006.

> 8.  In June of 2006 Kitchens placed an order and entered into a contract with Perfection for the manufacture and delivery of certain cabinetry and components to Kitchens' customer's job site within the month of July 2006.

> 9.  At the time the above stated two order [sic] were placed by Kitchens with Perfection, it was made known by Kitchens to Perfection that said orders has [sic] to be timely delivered to the specified designations; that the deliveries had to be made in complete tractor trailer loads; that the goods had to be shipped as complete units; and that the completed units shipped had to be accurately labeled to facilitate installations, which said terms Perfection agree [sic] to and represented to Kitchens could be met.

> 10.  Perfection breached its agreement with Kitchens in that:

>> A.    Perfection failed to timely manufacture and ship the ordered cabinetry and components within the schedule agreed upon.

3

      B.      Perfection failed to ship the cabinetry in complete
tractor trailer loads;

      C.      Perfection shipped less than complete units;

      D.      Perfection failed to properly label and or identify
the cabinetry and components shipped;

      E.      Perfection shipped incomplete, damaged,
nonconforming cabinetry and components; and

      F.      Perfection shipped cabinetry and components with
missing parts.

11.  As a consequence of Perfection's breaches as aforesaid, Kitchens was damages [sic] and forced to incur additional labor costs, material costs and warranty repair work to rectify, replace and/or cover the nonconforming, damaged and missing goods from Perfection, in an amount of approximately $150,000.00.

12.  In reliance upon the price quotes made by Perfection, Kitchens made certain sales proposals to its customers.

13.  After Kitchens made proposals to its customers in reliance on Perfection's quotes, Perfection notified Kitchens and Perfection would not honor its quotes, and insisted on a substantial price increase.

14.  As a consequence of Perfection's breach of contract, misrepresentation, repudiation and refusal to honor its price quotes, Kitchens was cause [sic] to lose contracts with its customers in the amount of $4,334,330.00, which said contracts has [sic] a 15 percent profit margin ($650,145.00) for Kitchens.

WHEREFORE, Kitchens demands judgment against Perfection in the amount of $800,145.00 together with interest and costs of court.

(Doc. 26).  As best the court can discern, in paragraphs "4" through "11", Kitchens seems to be

asserting two claims of breach of contract for transactions entered into in April and June of 2006.

In paragraphs "12" through "14", the defendant seems to be asserting claims of breach of

contract, misrepresentation, repudiation, and refusal to honor price quotes[6] for certain price

---

[6]The court is unaware of causes of action for repudiation and refusal to honor price quotes.

quotes made at unspecified times, that Perfection did not honor.

In its motion for summary judgment, Perfection specifically only addresses the defendant's claims regarding the price quotes.[7]  In its response to the plaintiff's motion, the defendant classifies its counterclaims as "(1) a counterclaim for defects in the performance by Plaintiff of the 'Rhode Island' project; and (2) a counterclaim for lost income based on Plaintiff's misrepresentation of its ability to produce the product and its refusal to honor its price given to Defendant Kitchens International, Inc."  (Doc. 36 at 12 of 23).

## II.    MOTION TO STRIKE

The plaintiff moves to strike the majority of Shiell's affidavit, which is offered in support of the defendants' opposition to Perfection's motion for partial summary judgment.  As grounds therefor, Perfection argues that Shiell's affidavit fails to meet the standards of Rule 56(e) of the FEDERAL RULES OF CIVIL PROCEDURE.  (Doc. 40 at 1of 5).

It is a fundamental principle that affidavits submitted in opposition to a motion for summary judgment may be stricken if they do not meet the requirements of FED. R. CIV. P. 56(e).  The United States District Court for the Middle District of Alabama has articulated the applicable law as follows:

> FEDERAL RULE OF CIVIL PROCEDURE 56(e) makes it plain that affidavits submitted in opposition to a motion for summary judgment ... shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein.  FED. R. CIV. P. 56(e).  The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper.  *See, e.g., Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000).  *Accord, Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  Affidavits which fail

---

[7]In its reply brief, the plaintiff devotes one paragraph to the defendants' breach of contract claim on the "Rhode Island" job.  (Doc. 39 at 10 of 11).

> to meet the standards set forth in Rule 56(e) may be subject to a motion to strike.
> *Givhan v. Electronic Eng'rs, Inc.*, 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998).
> However, if an affidavit contains some improper material, the court need not
> strike the entire affidavit, rather it may strike or disregard the improper portions
> and consider the remainder of the affidavit. *Id.* at p. 1334 n.2.

*Hawthorne v. Sears Termite & Pest Control, Inc.*, 309 F. Supp. 2d 1318, 1334 (M.D. Ala. 2003).

Additionally,

> An affidavit which fails to meet the standards of Rule 56(e) of the Federal
> Rules of Civil Procedure is subject to a motion to strike. *Southern Concrete Co.
> v. United States Steel Corp.*, 394 F. Supp. 362, 380 (N.D. Ga. 1975), *aff'd*, 535
> F.2d 313 (5th Cir. 1976). The motion to strike should state precisely the portions
> of the affidavit to which objection is being made, and the grounds therefor. *Id.*;
> *Olympic Ins. Co. v. H.D. Harrison. Inc.*, 418 F.2d 669, 670 (5th Cir. 1969). If no
> objection is made to inadmissible statements in an affidavit then the court may
> consider them on a motion for summary judgment. *Harrison*, 418 F.2d at 670;
> *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988).

*Givhan*, 4 F. Supp. 2d at 1334.

The plaintiff's counsel argues that paragraphs 6-12, 18-19, and 20 should be struck

because they "contain hearsay, statements made without firsthand knowledge and/or conclusory

arguments, opinions or allegations of law, none of which is admissible and can be considered for

purposes of an opposition to a motion for summary judgment." (Doc. 40 at 3). Counsel does not

present any further specificity. Because each of the challenged paragraphs is quite lengthy and

includes multiple sentences, the court is left to speculate which of the enumerated objections the

plaintiff is making to the ten disputed paragraphs and, more specifically, to which sentence in a

particular paragraph the objection or objections applies. For instance, the court has reviewed the

first two purportedly objectionable paragraphs (6 & 7) and finds that the objections are not well

founded. Specifically, as to the objection of a lack of firsthand knowledge, it is reasonable for

the court to find that as the president of the defendant, Shiell does have the requisite personal

knowledge as is specified in paragraph "1" of the affidavit.[8]  Accordingly, the court finds that under the circumstances, the motion is due to be denied.

## III.    SUMMARY JUDGMENT

### A.    Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56©; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof.  *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b).  Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

---

[8]The court also notes that much of the objected-to material consists of factual assertions.  To the extent that plaintiff's counsel believes that the affiant, Shiell, does not have the requisite personal knowledge, that is a matter for cross-examination at trial.

7

showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may

not merely rest on the pleadings.  (*Id.*).

After a motion has been responded to, the court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are

irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at

249.

**B.      DISCUSSION**

**1.      Breach of Contract on the Rhode Island Project**

Kitchens initially argues that Perfection makes no arguments in its brief in support of its

motion for summary judgment regarding Kitchens' counterclaim for breach of the Rhode Island

contract.  (Doc. 36 at 12).  The only mention that Perfection makes with regard to the Rhode

Island contract is in one paragraph of its reply to Kitchens' opposition to its motion for summary

judgment.  There, Perfection argues that Kitchens' claims are "claims for setoffs disguised as

counterclaims."  (Doc. 39 at 10).

To the extent Perfection argues that summary judgment is due to be granted on the breach

of contract counterclaim regarding the Rhode Island contract because it is a claim for setoff, the

court disagrees.  The only authority that Perfection cites in support of its assertion is not only not

binding, but also inapplicable, and therefore, not persuasive.[9]  The court finds that Kitchens'

counterclaim concerning the Rhode Island contract is due to go forward.  To the extent Perfection

attempts to argue the breach of contract claim is due to be dismissed for any other reason, the

court finds that it has failed to sufficiently advance any other argument in its motion.  Therefore,

Perfection's motion for summary judgment is due to be denied as to Kitchens' breach of contract

claim on the Rhode Island project.

**2.     Breach of Contract on the Price Quotes**

Kitchens argues that Perfection provided it with "written confirmed acknowledgments of

cabinet pricing"[10] for eight other projects, and that it relied on Perfection's pricing when

confirming bids for its clients.  (Doc. 36 at ¶ 14; Shiell Aff. at ¶ 18).  Perfection later reneged on

the quoted prices, causing Kitchens to lose millions of dollars in projects.  Additionally, Kitchens

argues that Perfection's failure to timely send a cabinet sample, and the poor quality of an

---

[9]Perfection cites a 1995 Montana Supreme Court case for the proposition that "a setoff seeks to reduce plaintiff's recovery while a counterclaim is for affirmative relief."  Perfection's proposition is taken out of context.  What the case actually says is,

> The District Court's holding fails to recognize the difference between a counterclaim for affirmative relief and a defense which simply seeks to reduce the plaintiff's recovery dollar-for-dollar based on a defense that could have been asserted against the assignor. As noted in *Nancy's Product, Inc. v. Fred Meyer, Inc.* (1991), 61 Wash. App. 645, 811 P.2d 250, 253:
>
> > [W]hen setoff is asserted against an assignee, it diminishes or defeats the assignee's claim, although the assignee has no liability in excess of the amount sued on. Such avoidance of liability is in the nature of a defense, as distinguished from a counterclaim which is a demand for affirmative relief.
>
> Further support for this proposition is found at 6 Am. Jur. 2d Assignments § 102 (1963), which provides:
>
> > In an action on a claim assigned, the assignee is ordinarily subject to any setoff or counterclaim available to the obligor against the assignor and to all other defenses and equities which could have been asserted against the chose in the hands of the assignor at the time of the assignment.

*F.D.I.C. v. Northern Montana Gas Co.*, 908 P.2d 1357, 1362 (Mont. 1995).

[10]This term is not defined in Shiell's affidavit or in the defendant's brief and no such document appears in the record. The court presumes the defendant is referring to the "quotes" provided Perfection (*see e.g.* doc. 35-8).

9

untimely sent sample, damaged its reputation with a long-standing client, and also caused it to lose close to a million dollar contract.  (Doc. 36 at 10-11 of 23).

Perfection counters that it merely provided price quotes to Kitchens and the quotes never amounted to binding contracts.  (Doc. 34 at 11 of 29).  Specifically, Perfection asserts that, where parties have simply exchanged price quotes, an offer and acceptance has not taken place, and a contract does not exist.  (*Id*. at 12 of 29).  In support thereof, the plaintiff argues that "an agreement to enter into an agreement upon terms to be afterwards settled between the parties, is a contradiction in terms, and amounts to nothing."  (Doc. 34 at 12 of 29 (quoting *Elmore, Quillian and Co. v. Parish Bros.*, 24 So. 203, 204 (1911))).  While the court does not disagree with that concept, the court finds that it is inapplicable to the instant case.  Nothing before the court suggests that the parties in the instant case had any agreement whatsoever, much less an agreement to enter into an agreement.  Instead, Perfection provided Kitchens with quotes.  The quote sheets submitted to Kitchens included the express language "QUOTE," "QUOTE ONLY," and/or "Please call us at 256-739-1958 if we can be of service."  (Doc. 35-8; Apel Aff. at ¶ 6).  Nothing in the quote sheets binds either party.  Just as Kitchens' act of requesting quotes on certain cabinetry did not bind them to the purchase of that cabinetry, the quotes are not binding under the present circumstances on Perfection.  Absent mutuality of obligation, no adequate consideration exists; and therefore, no contract exists.  *See* 17A Am. Jur. 2d Contracts § 23 (2010).

Kitchens further argues as follows:

> Plaintiff first argues that it only extended price "quotes" to Defendants, and "quotes" do not bind Plaintiff to a contract.  Plaintiff's argument fails to take into account the customs and trade usage of the multifamily housing industry. The customs, standards and trade usage of a [sic] industry group, even if a party is

actually unaware of the customs, standards and trade usage. *Foxco Industries, ltd. v. Fabric World, Inc.*, 595 F. 2d 976, 984 (C.A. Ala. 1979). Defendant Janet-Marie Shiell, who Plaintiff alleges is experienced and knowledgeable in the industry, testified about the trade usage in the multifamily housing industry.

The custom and practice in the multifamily housing market is for suppliers such as the Plaintiff to provide customers such as [Defendant] with a catalog containing price lists. Plaintiff provided such a catalog and price book to [Defendant]. [Defendant] would submit orders to manufacturers such as Plaintiff based on the pricing contained in the price catalog. Manufacturers such as Plaintiff supply customers such as [Defendant] with price lists every year and/or on occasion when they change their process. Based on the pricing disclosed in the manufacturer's catalog, [Defendant] would place a bid on a job, with the bid to hold good for a specified number of days. In all of its years of business, [Defendant] has never had a vendor such as the Plaintiff back out of its pricing or raise its prices after the [Defendant] had submitted a bid incorporating that vendor's products and pricing.

In this case, Plaintiff submitted its price list to [Defendant] as contained in its catalog. In addition, on June 22, 2006[,] Plaintiff submitted a "quote" to [Defendant] for another specific job (the Canton, MA job), and did not limit the time for which that quote would be held open. Of necessity, Plaintiff knew [Defendant] would be bidding the Canton, MA job relying on Plaintiff's stated price for the cabinetry. Under the customs and trade practices in the multifamily housing industry, Plaintiff was at least obligated to honor its quote on the Canton, MA job. Plaintiff's repudiation in July 2006 of its price quote caused [Defendant] to lose the Canton, MA job. Consequently, [Defendant] has a valid counterclaim against Plaintiff for the ensuing damages from that breach. Ala. Code § 7-2-610 (2006 Replacement Ed.).[11]

---

[11]Ala. Code § 7-2-610 provides:

Anticipatory repudiation.

When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may:

(a) For a commercially reasonable time await performance by the repudiating party; or

(b) Resort to any remedy for breach (Section 7-2-703 or Section 7-2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and

(c) In either case suspend his own performance or proceed in accordance with the provisions of this article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (Section 7-2-704).

(Doc. 36 at 12-14 of 23 (internal record citations omitted)).

Kitchens' assertion that "[t]he customs, standards and trade usage of a [sic] industry group are binding and part of the contracts and dealings between business entitles [sic] in that industry group, even if a party is actually unaware of the customs, standards and trade usage," (doc. 36 at 12 of 23), has no bearing on the instant case because no contract existed.  Kitchens seems to be using that assertion to establish that the court can depend on trade usage to *create* a contract, which is well beyond the scope of the *Fabric World* court's ruling.  The court in *Fabric World* examined the relevant sections of the Uniform Commercial Code and the Alabama Code, and reasoned

> (Section 2-202(a)) [of the U.C.C.] makes admissible evidence of course of dealing, usage of trade and course of performance to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached.  Such writings are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased.  Unless carefully negated they have become an element of the meaning of the words used.

> *Id*., Official Comment, (emphasis added). Section 1-205(2), Ala. Code tit. 7, s 7-1-205(2) (1977), defines trade usages. It provides in part that

> A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.  The existence and scope of such a usage are to be proved as facts.

> It further states: "A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement."  Ala. Code tit. 7, § 7-1-205(3) (1977).  There was uncontroverted testimony that the Knitted Textile Association is an industry group with over 1500 members.  Its standards could certainly qualify as trade usages, and thus were admissible notwithstanding Fabric World's unawareness of them.

*Foxco Industries, ltd. v. Fabric World, Inc.*, 595 F. 2d at 985.

In the instant case, no "terms of any writing stating the agreement of the parties" exist such that the court should rely on trade usage to "explain or supplement" the same.  The specific language on the quotes themselves warrants the granting of the motion for summary judgment as to this portion of Kitchens' counterclaim.  Accordingly, the court finds that the plaintiff's motion for summary judgment on the defendants' counterclaim for breach of contract as it pertains to the price quotes is due to be granted.

### 3.      Lost Business Profits

Kitchens next argues that Perfection is liable to it for lost business profits because of "plaintiff's poor quality samples that were submitted too late."  (Doc. 36 at 15 of 23).  Specifically, Kitchens asserts that "Plaintiff was extremely late in submitting the sample; the sample was of poor quality and rejected by [the client]; and a second sample was sent late and of no better quality," which caused Kitchens to lose the job.  (*Id.*)  The problem with this argument concerning the counterclaim related to the quotes, however, is that lost profits is a measure of damages, and a not a claim unto itself.  *See* ALA. CODE § 7-2-714 (2006); 24 Williston on Contracts § 66:75 (4th ed.).  Because the court has already found that no contract existed regarding the quotes, the court also finds that Perfection is entitled to summary judgment on Kitchens' counterclaim for lost business profits.

### 4.      Misrepresentation

As stated previously, a liberal reading of the defendant's counterclaims could include a claim for misrepresentation.  Although the defendant does not allude to the code section giving rise to such a claim, the court presumes it would be proceeding under ALA. CODE § 6-5-103.  That section provides:

**§ 6-5-103. Deceit -- Right of action generally.**

       Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action.  Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action.  In all cases of deceit, knowledge of a falsehood constitutes an essential element.  A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

ALA. CODE § 6-5-103 (bold in original).  Because the defendant does not argue misrepresentation in their brief opposing the plaintiff's motion for summary judgment on the counterclaims, the court is left to guess what their arguments might be.  This the court is unwilling to do.  Regardless, the court finds that the defendant has failed to adequately establish that the plaintiff misrepresented a fact that induced the defendant to act to its detriment.  To recover on a claim of fraudulent misrepresentation, the defendant must establish four elements: "'(1) a false representation (2) concerning a material existing fact (3) relied upon by the [defendant] (4) who was damaged as a proximate result.' *Baker v. Bennett*, 603 So. 2d 928, 935 (Ala.1992)."  *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000).

       As stated previously, the court finds that Kitchens has failed to establish that the prices provided to them were anything more than quotes.  Therefore, the court finds that the defendant could not have reasonably relied upon the quotes to its detriment.  Moreover, the court finds that the defendant has failed to establish that the plaintiff's price quotes, which later changed, amounted to a misrepresentation.  The court finds that the plaintiff's motion for summary judgment on the defendant's misrepresentation claim, to the extent one is pled, is due to be granted.

14

## IV.    CONCLUSION

For the reasons stated herein, the court finds that the plaintiff's motion for summary judgment on the defendant's counterclaims (doc. 33) is due to be granted in part and denied in part, and the plaintiff's motion to strike (doc. 40) is due to be denied.  An order in accordance with the court's findings will be entered contemporaneously herewith.

DONE, this the 15th day of July, 2010.

_John E. Ott_
_____

JOHN E. OTT
United States Magistrate Judge